**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-6325**

───────────────

ROBERT GARY MOORE,

　　　　　Petitioner - Appellee,

　　v.

STATE OF MARYLAND; ATTORNEY GENERAL OF MARYLAND; WARDEN
RONALD S. WEBER,

　　　　　Respondent - Appellant.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore.
James K. Bredar, Senior District Judge.  (1:20-cv-00512-JKB)

───────────────

Argued:  January 28, 2025　　　　　　　　Decided:  January 7, 2026

───────────────

Before NIEMEYER, BENJAMIN and BERNER, Circuit Judges.

───────────────

Vacated and remanded by published opinion.  Judge Berner wrote the opinion, in which
Judge Benjamin joined. Judge Niemeyer wrote a dissenting opinion.

───────────────

**ARGUED:**  Andrew John DiMiceli, OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, Baltimore, Maryland, for Appellant.  Paresh S. Patel, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellee.  **ON BRIEF:**
Anthony G. Brown, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, Baltimore, Maryland, for Appellants.  James Wyda, Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for
Appellee.

───────────────

BERNER, Circuit Judge:

Robert Gary Moore was tried in Maryland state court on two criminal counts: possession of cocaine and possession of cocaine with intent to distribute. On the second day of a three-day trial, the State introduced a previously undisclosed report, which purported to describe the chain of custody of a plastic bag containing a substance that the state relied upon to prove Moore possessed cocaine. The newly disclosed report could have been used to cast doubt on whether the State had tested the contents of the plastic bag, thus potentially undermining the sole evidence upon which the State relied to prove an essential element of its case. The jury found Moore guilty of both counts.

After unsuccessfully pursuing relief in Maryland state court, Moore filed a petition for a writ of habeas corpus in federal district court. He argued first that the State's belated disclosure of the chain-of-custody report violated his right to due process as required under *Brady v. Maryland*. 373 U.S. 83 (1963). Second, Moore argued that his trial counsel had been ineffective by failing to object to the belated disclosure or introduction of the chain-of-custody report. Although the district court denied habeas relief on Moore's claim of ineffective assistance of counsel, it ruled that Moore was entitled to habeas relief on his *Brady* claim. The district court then ordered Moore's conviction vacated unless he was retried within sixty days. The State timely appealed.

We agree with the district court that the Maryland state court unreasonably applied clearly established federal law in its adjudication of Moore's habeas petition. The State committed a *Brady* violation and, therefore, habeas relief is warranted. Because federal district courts lack authority to vacate state court convictions, however, we vacate the

2

underlying order and remand for the district court to issue a new order consistent with the proper bounds of federal habeas relief.

## I. Background

### A. Factual History

We describe the facts of Moore's underlying criminal case as adopted by Maryland's courts.[1] Two plainclothes police detectives traveled to a street in Baltimore following a tip from a confidential informant alleging drug deals were taking place in the area. There, the officers observed Moore and another individual standing in front of a parked vehicle. One of the detectives announced that he was a police officer and displayed his badge. Moore reached into his pocket, pulled out a plastic bag, dropped it on the ground, and fled on foot. Following a chase, the detectives caught Moore and placed him under arrest. The detectives then recovered the plastic bag and turned it over to the Baltimore Police Department's Evidence Control Unit (ECU) for safekeeping.

At trial, the State relied upon a laboratory analysis prepared by chemist Barry Verger (the Verger Lab Analysis) attesting that the plastic bag contained 10.28 grams of cocaine. Verger did not testify. The Verger Lab Analysis was the sole evidence introduced by the State to meet its burden to prove that Moore possessed cocaine at the time of his arrest.

---

[1] We presume, as we must, that the "state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Nicholas v. Att'y Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C. § 2254(e)(1)). Although Moore disputes certain facts as described, these disputes are not relevant to this appeal.

3

To establish the authenticity of the plastic bag and its contents, the State relied on two different chain-of-custody reports that both purported to list every individual and entity that had access to or took possession of the plastic bag while it was in police possession.[2] The Baltimore Police Department's Laboratory Section maintained the first chain-of-custody report (Laboratory Section report). The State disclosed this report to Moore prior to the commencement of trial. The ECU maintained the second chain-of-custody report (ECU report). The State disclosed the ECU report to Moore only on the second day of trial, at the same time the State introduced the report into evidence. Notably, Verger's name does not appear in the ECU report. Had the State provided the ECU Report earlier, Moore's counsel may have capitalized on the discrepancy between the two reports to raise a number of questions about the State's case: did Verger test the correct bag? Was his analysis valid? Was the Laboratory Section report doctored to add Verger's name? Yet Moore's trial counsel raised no objection to the State's belated disclosure of the ECU report or its introduction into evidence. The timing of the disclosure lies at the heart of this appeal.

---

[2] Chain-of-custody reports "establish that the item to be introduced [into evidence] is what it purports to be so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *United States v. Robinson*, 55 F.4th 390, 404–05 (4th Cir. 2022) (internal citations omitted).

4

B. Procedural History

As is true with most matters that come before this court on habeas review, the procedural history of Moore's case is complex, stretching almost fifteen years and winding through multiple court proceedings. Following a three-day trial, a jury found Moore guilty of simple possession and possession with intent to distribute cocaine. The state trial court sentenced Moore to eight years' incarceration. Moore appealed his conviction and the Maryland intermediate court affirmed.

Moore then filed a petition for habeas relief in state court under the Maryland Uniform Postconviction Procedure Act. Md. Code Crim. Proc. § 7-101 *et seq.* He argued that the State violated his due process rights under *Brady* when it failed to disclose the ECU report in a timely manner. Among his other claims, Moore asserted that his trial counsel was ineffective for failing to object to the admission of the ECU report during trial. According to Moore, had he been given access to the ECU report in a timely manner, he would have been able to impeach the State's witnesses who testified about the contents of the plastic bag and the handling of the bag while in police custody. Such impeachment, Moore argues, would have undermined a key element of the State's case.

During the proceedings on Moore's state habeas petition, Moore's trial counsel testified that he might have pursued a different defense strategy had the State disclosed the ECU report earlier. Rather than arguing that the State failed to prove that the cocaine belonged to Moore, trial counsel would instead have considered basing Moore's defense on the theory that the State failed to prove beyond a reasonable doubt that Moore had

5

possessed cocaine at all. The State's belated disclosure of the ECU report precluded Moore's trial counsel from mounting this defense.

The Maryland trial court granted habeas relief to Moore and ordered a new trial. *Moore v. State*, No. 109320036, at \*17, Mem. Op. (Cir. Ct. Balt. City, July 31, 2018). Although it rejected Moore's ineffective assistance of counsel claims, the Maryland trial court agreed that the State violated Moore's due process rights under *Brady*. *Id.* at \*4–16; *see Giglio v. United States*, 405 U.S. 150, 153–54 (1972) (clarifying that *Brady* includes an obligation to disclose impeachment evidence). The Maryland trial court reasoned that the State's belated disclosure of the ECU report "foreclosed an entire theory of defense" which could have led to a different outcome, thereby undermining "confidence in the verdict." *Id.* at \*16 (internal citation omitted).

The State appealed the grant of Moore's state habeas petition. The Maryland intermediate court neither affirmed nor reversed. *State v. Moore*, No. 2902, 2019 WL 4017522, at \*15 (Md. Ct. Spec. App. Aug. 26, 2019). Instead, it remanded the case back to the Maryland trial court to conduct additional fact-finding to determine whether the State had disclosed the ECU report during or following the close of Moore's criminal trial. *Id.* According to the Maryland intermediate court, as long as potentially exculpatory evidence is "disclosed at trial, even belatedly, it is not suppressed" for purposes of *Brady*. *Id.* at \*13.

On remand in the state habeas proceeding, the Maryland trial court reconsidered both Moore's *Brady* claim and his ineffective assistance of counsel claim. *Moore v. State*, No. 109320036, at \*2–9, Mem. Op. (Cir. Ct. Balt. City, Feb. 5, 2020). The Maryland trial court concluded that the State disclosed the ECU report to Moore in the middle of the

6

criminal trial, at the same time the State introduced it into evidence. *Id.* at *2–4. Applying the interpretation of *Brady* set forth in the Maryland intermediate court's decision, the Maryland trial court ruled that Moore's *Brady* rights had not been violated because the State disclosed the ECU report during trial—not after the close of trial—and, therefore, the defense had "an opportunity to use the evidence to its advantage." *Id.* at *4–5. Paradoxically, the Maryland trial court then concluded that Moore's trial counsel could not be deemed "ineffective" because the State disclosed the ECU report too late for him to utilize it in Moore's defense strategy. *Id.* at *5–7.[3] Finding no constitutional violation under either theory, the court vacated its prior order and denied Moore's petition for state habeas relief. *Id.* at *8–9.

Moore sought leave to appeal the Maryland trial court's second state habeas ruling, this time proceeding *pro se*. In his application, Moore pointed to the trial court's findings on the *Brady* and ineffective assistance of counsel claims as grounds for reversal. The Maryland intermediate court denied leave to appeal. *Moore v. State*, No. 2654, at *2 (Md. Ct. Spec. App. Aug. 13, 2020).

---

[3] Although the Maryland trial court suggested that it was deferring to trial counsel's strategic choice to not "draw (additional) attention" to the bag's contents, the Maryland trial court's findings of fact lead inexorably to the conclusion that the State's belated disclosure made it impossible for trial counsel to be able to in fact make the choice as to whether to incorporate the newly disclosed report into his trial strategy. *See e.g.*, *Moore*, No. 109320036, at *6, Mem. Op. (Cir. Ct. Balt. City, Feb. 5, 2020). ("The by-the-way disclosure of the ECU Document at trial . . . wrested from trial counsel even the barest opportunity to pay thoughtful consideration to shifting trial strategy.").

Moore then filed a *pro se* petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, in which he raised several constitutional claims, including that his trial counsel had been ineffective in failing to inspect the ECU report when the State disclosed it as it was being introduced at trial. Moore argued that the conclusions of the Maryland trial court were "contradictory." J.A. 162.[4] On the one hand, the Maryland trial court concluded that the ECU report was introduced in a timely manner consistent with *Brady* because it was disclosed during the trial and defense counsel had an opportunity to use the report to Moore's advantage. On the other hand, the Maryland trial court concluded that the ECU report was disclosed too late for Moore's trial counsel to incorporate its contents—and the discrepancies between that report and the Laboratory report—into his defense strategy. This contradiction demonstrates, Moore argued, that the Maryland trial court erred in concluding that there had been no constitutional violation at trial. Moore requested the federal district court to appoint counsel "to articulate and particularize" his argument about this contradiction "more effectively." J.A. 166, 1474.

Although it denied Moore's habeas petition in part, the federal district court granted Moore's request to appoint counsel to represent him in the ongoing federal habeas proceedings. *Moore v. Warden*, No. CV JKB-20-512, 2023 WL 2480545, at *18 (D. Md. Mar. 10, 2023). The district court agreed that the Maryland trial court's conclusions with respect to Moore's *Brady* and ineffective assistance of counsel claims were inconsistent. *Id.* at *16–18. Accordingly, the district court requested briefing on the surviving issue:

---

[4] Citations to J.A. refer to the Joint Appendix filed by the parties.

8

whether Moore suffered "prejudice . . . in reference to the timing of the *Brady* disclosure and/or counsel's advocacy in relation thereto." *Id.* at *18.[5]

Once represented by court-appointed counsel, Moore moved to amend his habeas petition pursuant to Federal Rule of Civil Procedure 15(c). The amended habeas petition relied on the same set of facts raised in the initial *pro se* petition and asserted that the State's belated disclosure of the ECU report violated Moore's due process rights under *Brady*. After granting leave to amend, the federal district court reached the merits of Moore's petition and granted habeas relief. *Moore v. Warden*, 717 F. Supp. 3d 451 (D. Md. 2024).

The district court found that the Maryland trial court had "unreasonably appl[ied] the facts to Moore's *Brady* claim." *Id.* at 463. The district court determined that the State violated Moore's *Brady* rights because the ECU report was: 1) favorable to Moore, 2) improperly suppressed by the State, and 3) material to Moore's defense. *Id.* at 461–63. The district court remanded the case to the Maryland trial court for a new trial within sixty days of its order and—if no trial was held within that time—directed that Moore's conviction and sentence be vacated entirely. *Id.* at 464. That ruling is before us on appeal.

This chart depicts the procedural history described above, including the multiple rounds of state habeas and federal proceedings.

---

[5] The district court did not, as the dissent asserts, dismiss all of Moore's claims. To the contrary, the district court appointed counsel to address Moore's ineffective assistance of counsel claim in view of the inconsistencies that Moore, acting *pro se*, had identified in the Maryland trial court's factfinding. *Moore*, 2023 WL 2480545, at *16–18. Once appointed, Moore's counsel sought leave to file an amended petition asserting a *Brady* claim and the district court exercised its discretion to grant the motion.

**Procedural History**



II. Jurisdiction

Before proceeding to the merits of Moore's appeal, we must assure ourselves of our jurisdiction. *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010). Federal courts have jurisdiction over habeas petitions only when the individual bringing the petition is "in custody." 28 U.S.C. § 2254. Although Moore has already served the sentence challenged in his petition, he remains incarcerated for unrelated crimes. A petitioner is considered to be "in custody" for purposes of habeas jurisdiction, even after he has completed his challenged sentence, if the petitioner is currently incarcerated and serving consecutive sentences for other crimes. *Garlotte v. Fordice*, 515 U.S. 39, 45–46 (1995). Accordingly, because Moore is currently incarcerated serving consecutive sentences, we have jurisdiction to hear Moore's appeal.

III. Analysis

A. Procedural Default

As a threshold matter, the State contends that Moore procedurally defaulted on his *Brady* claim. According to the State, Moore did not raise the claim in his *pro se* application for leave to appeal the Maryland trial court's denial of his state habeas petition (phase 5 of the procedural history chart).[6] We disagree.

The procedural default doctrine prohibits federal habeas review if a petitioner defaulted on the relevant claim "pursuant to an independent and adequate state procedural rule." *Richmond v. Polk*, 375 F.3d 309, 322 (4th Cir. 2004). The State argues that Moore failed to comply with Maryland Rule 8-204. That rule requires litigants to include in an application for leave to appeal "a concise statement of the reasons why the judgment should be reversed or modified" and to "specify the errors allegedly committed by the lower court." Md. Rule 8-204(b)(3). Moore met this requirement.

In his application for appellate review of the Maryland trial court's denial of his state habeas petition, Moore asserted in the allegations-of-error section that the State had violated his rights under *Brady*. He also pointed to the State's belated disclosure of the

---

[6] The State alternatively contends that Moore's *Brady* claim must be rejected because Moore's postconviction counsel conceded the claim on remand. The Maryland trial court did not treat Moore's *Brady* claim as conceded, however. *Moore*, No. 109320036, at *4–5 (Cir. Ct. Balt. City, Feb. 5, 2020). To the contrary, the trial court adjudicated the claim on its merits. *Id.* It was therefore properly preserved for purposes of federal habeas relief. 28 U.S.C. § 2254(d).

11

ECU report as grounds for arguing ineffective assistance of counsel. Moore focused on the ineffective assistance of counsel claim in his appeal. Thus, according to the State, Moore procedurally defaulted the *Brady* claim. We disagree.

When a petitioner in a state habeas proceeding raises one claim that is sufficiently interrelated with another, Maryland courts treat both claims as raised for purposes of preservation for appellate review. *Unger v. State of Maryland*, 48 A.3d 242, 256 (Md. 2012) ("It is a settled principle of Maryland procedure that, for purposes of preservation in various contexts, where the issue raised by a litigant is sufficiently interrelated with another issue not raised, the court will treat them as if both issues were raised by the litigant.").

In *Unger*, the habeas petitioner asserted on appeal that the trial court's jury instructions violated his due process rights. *Id.* at 251. The petitioner also argued that his trial counsel had been ineffective because he failed to object to the same jury instructions. *Id.* The prosecution argued that the petitioner had waived his ineffective assistance of counsel claim on appeal because he failed to raise it before the postconviction trial court. *Id.* at 253. Maryland's highest court held that the ineffective assistance of counsel claim had not been waived because it was sufficiently interrelated with the jury instructions claim, which had been raised in front of the postconviction trial court. *Id.* "[B]oth [were] dependent upon the [same] question" despite being based on different legal theories. *Id.* Subsequent decisions by Maryland's highest court have reaffirmed this principle. *See, e.g.*,

12

*State v. Hart*, 144 A.3d 609, 621 (Md. 2016); *State v. Elzey*, 244 A.3d 1068, 1081 n.9 (Md. 2021).[7]

Moore's *Brady* and ineffective assistance of counsel claims are sufficiently interrelated. Neither claim, therefore, is procedurally barred under state law. Both claims turn on the same set of facts: the belated disclosure of the ECU report prejudiced Moore by preventing him from being able to undermine the reliability of the State's sole evidence in support of an essential element of the crimes with which he was charged. Both claims would fail if Moore was not prejudiced by the belated disclosure. To be sure, the claims differ insofar as they hold different parties responsible for the prejudice: the ineffective assistance of counsel claim faults Moore's trial counsel, whereas the *Brady* claim faults the State. The claims are otherwise two sides of the same coin. They are exactly the type of interrelated claims that Maryland's highest court held preserved in *Unger*.

## B. Exhaustion

Prior to seeking habeas relief in federal court, individuals incarcerated in state prisons must exhaust all remedies available to them in state court. 28 U.S.C. § 2254(b). Exhaustion is "distinct [from] but related" to procedural default. *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021) (quoting *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998)). The purpose of exhaustion is to ensure that a claim is "fairly presented" to the state court first.

---

[7] The dissent charges that our opinion impedes on the State's sovereign power to interpret its laws. To the contrary. Our procedural exhaustion analysis faithfully applies the rules established by Maryland's highest court. The dissent ignores this precedent, thereby engaging in the very error it accuses the majority of committing.

13

*Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). A claim is fairly presented when the petitioner raised to the state courts "the substance of his federal habeas corpus claim." *Id.* "To satisfy his burden, the petitioner must show that both the operative facts and the controlling legal principles [were] presented to the state court." *Gordon v. Braxton*, 780 F.3d 196, 201 (4th Cir. 2015) (citation and internal quotations omitted).

Moore raised both the facts and the legal principles of his *Brady* claim in his state postconviction proceedings and thus exhausted his state court avenues of relief with respect to this claim. Moore presented his *Brady* claim twice to the Maryland trial court and twice to the Maryland intermediate court (in phases 3, 4, 5, and 6 of the procedural chart, respectively). Indeed, the Maryland trial court initially granted habeas relief on the basis of precisely the same *Brady* violation at issue here (phase 3). On its initial habeas review, the Maryland intermediate court explicitly addressed the *Brady* claim (phase 4). *Moore*, 2019 WL 4017522, at *13. Even at this stage, there was a sufficient basis to conclude that Moore's claim had been exhausted. On remand, the Maryland trial court again considered the Brady claim and, this time, denied relief (phase 5). On its second round, the Maryland intermediate court denied Moore's petition to appeal on his interrelated claims (phase 6). The suggestion that Moore did not fairly present his *Brady* claim to the state court strains credulity. He most certainly did.

14

C. The Merits of Moore's Habeas Petition

Turning now to the merits of Moore's federal habeas claim, we find that the Maryland trial court unreasonably applied *Brady* in denying his state habeas petition (at phase 5).

This court reviews *de novo* a district court's order that a petitioner's habeas claim merits relief. *Nicholas v. Att'y Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs our review. 28 U.S.C. § 2254. AEDPA demands that federal courts engage in a "highly deferential" review of state court decisions. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). Under AEDPA, a federal court may grant habeas relief only if the state court decision is contrary to clearly established federal law, involves an unreasonable application of that law, or relies on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *White v. Woodall*, 572 U.S. 415, 419–20 (2014).

We apply AEPDA deference to evaluate the last state court decision to explain its reasoning for rejecting the petitioner's claim. *Brumfield v. Cain*, 576 U.S. 305, 313 (2015). In this case, the Maryland intermediate court summarily denied Moore's petition for appellate review without providing an explanation (phase 6). Accordingly, we "look through" the intermediate court's unexplained decision to deny review (phase 6) and consider instead the Maryland trial court's second habeas ruling as the last reasoned state court decision (phase 5). *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). In that decision, the Maryland trial court ruled that the ECU report was not suppressed in violation of Moore's

*Brady* rights. Our task is to determine whether this ruling was an unreasonable application of clearly established federal law. If so, federal habeas relief is appropriate.

We must first determine whether the federal law in question was clearly established. It is undisputed that the duty of the prosecution to disclose exculpatory evidence to the defense is clearly established. *Long v. Hooks*, 972 F.3d 442, 462 (4th Cir. 2020), *as amended* (Aug. 26, 2020); *see Brady*, 373 U.S. at 87 ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). "As a matter of practice"—and fundamental fairness—"the prosecution should err on the side of disclosure." *Juniper v. Davis*, 74 F.4th 196, 254 (4th Cir. 2023) (internal citation omitted). The Supreme Court has recognized that *Brady* also requires the prosecution to disclose evidence that would be useful to impeach government witnesses. *Giglio*, 405 U.S. at 155.

To prevail on a claim arising under *Brady*, a defendant must prove three elements. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). First, the evidence at issue is favorable to him, either because it is exculpatory or impeaching. Second, the prosecution suppressed the evidence, either willfully or inadvertently. Third, the evidence was material, such that it may have impacted the outcome of the case. *Id.*

Because we hold that the Maryland trial court erred in determining that the ECU report had not been suppressed, we begin with that element.

16

1.      *Suppression*

Evidence disclosed after a trial commences is "suppressed" for *Brady* purposes if the prosecution's delay prevented the defendant from "using the disclosed material effectively in preparing and presenting [his] case." *United States v. Sterling*, 724 F.3d 482, 511 (4th Cir. 2013). That is what occurred here. The State does not dispute that it possessed the ECU report prior to the commencement of Moore's three-day criminal trial. The State also does not dispute that it disclosed the report to defense counsel only as it was being admitted into evidence during the second day of that trial. This belated disclosure prevented Moore from using the ECU report effectively to prepare and present his defense.

First, Moore lacked sufficient time to examine the ECU report. The key difference between the ECU report and the Laboratory Section report is small, but significant. The Laboratory Section report lists Verger as having had custody of the plastic bag. The ECU report does not mention Verger's name. In the heat of trial, this small difference could easily be overlooked. The Maryland trial court recognized as much when it concluded that trial counsel could not reasonably have been expected to "compare the two multi-page documents—on the fly, mid-testimony to identify any material inconsistencies worthy of exploitation." *Moore*, No. 109320036, at *7 (Cir. Ct. Balt. City, Feb. 5, 2020).

Second, even if Moore's trial counsel had time to examine the ECU report, it was already too late to use it in his defense strategy given the advanced stage of the trial proceedings. Moore's counsel had completed his opening statement in which he told the jury that there was "no doubt" that the detectives had recovered a plastic bag containing drugs and sent it to a laboratory for analysis. J.A. 738. Trial counsel had also already

17

completed his cross-examination of one of the detectives that apprehended and arrested Moore. Had trial counsel shifted his strategy to take advantage of the ECU report after it was disclosed, he would have risked undermining his credibility with the jury. In the words of the Maryland trial court, the "by-the-way disclosure of the ECU Document at trial . . . wrested from trial counsel even the barest opportunity to pay thoughtful consideration to shifting trial strategy." *Moore*, No. 109320036, at \*6 (Cir. Ct. Balt. City, Feb. 5, 2020).

Relevant here, the Maryland trial court reached paradoxical conclusions. It concluded that the delayed disclosure prevented Moore's counsel from effectively using the ECU report in its discussion of Moore's ineffective assistance of counsel claim. *Id.* at \*4–5. Then, seemingly contradicting itself, the trial court also concluded that there had been no *Brady* violation because Moore's counsel *could* have cross-examined subsequent witnesses on the discrepancy between the two chain-of-custody reports after the ECU report had been disclosed. *Id.* at \*4–5. This conclusion misapprehends the requirement for disclosure of exculpatory material under *Brady*. It is not sufficient for the prosecution to merely disclose *Brady* evidence *at some point* before the close of trial. Rather, the *Brady* evidence must be disclosed in time for defense counsel to have the opportunity to use the material effectively. *Sterling*, 724 F.3d at 511.

Notably, the Maryland trial court's initial grant of habeas relief was based on the same *Brady* violation that formed the basis of the district court's grant of habeas relief. *Moore*, No. 109320036, at \*12–17 (Cir. Ct. Balt. City, July 31, 2018) (phase 3). On appeal,

18

however, the Maryland intermediate court remanded for additional factfinding (phase 4).[8]

Improperly construing *Williams v. State*, 7 A.3d 1038, 1050 (Md. 2010), a decision of Maryland's highest court, the Maryland intermediate court pronounced that there could have been no *Brady* violation if the State had disclosed the ECU report at some point during the trial. *Moore*, 2019 WL 4017522, at \*7. This is not the rule set forth in *Williams,* or *Brady*. In *Williams*, the prosecution failed to disclose *Brady* material prior to the defendant's first trial but disclosed it in advance of the defendant's second trial. 7 A.3d at 1050–51. Maryland's highest court concluded that the prosecution did not violate *Brady* because the defendant received the material well in advance of his second trial and thus was not prejudiced by this delay. *Id.* at 1050. Therefore, *Williams* was correctly decided and dictates that we address the following question: Did the defendant suffer prejudice as a result of the prosecution's belated disclosure? Contrary to the holding of the Maryland intermediate appellate court, disclosure of *Brady* evidence in the middle of a trial can most certainly constitute a *Brady* violation, as it did in this case. *See Sterling*, 724 F.3d at 511.

The Maryland trial court's findings of fact on remand confirm that the State's belated disclosure deprived Moore of the opportunity to identify the discrepancy in the report and to consider its impact on defense strategy. We therefore hold that the State's mid-trial disclosure of the ECU report constituted "suppression" for purposes of *Brady*.

---

[8] Although the decision of the Maryland intermediate court on the first round of state habeas (phase 4) is not before us on review, we discuss that court's holding because the Maryland trial court was bound by the intermediate court's erroneous explication of *Brady* when it received the case on remand (phase 5).

19

The Maryland trial court's incongruous conclusion that the State had not suppressed the evidence was an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Accordingly, under AEDPA, federal habeas relief is appropriate if the other prongs of *Brady*—favorability and materiality—are established.

### 2.      *Favorability and Materiality*

We must next determine whether the ECU report, if timely disclosed, would have been favorable and material to Moore's defense. While these are separate inquiries, we note that material evidence is, by necessity, also favorable.

Evidence is considered favorable to a defendant when it is exculpatory or impeaching. *Juniper v. Zook*, 876 F.3d 551, 564–65 (4th Cir. 2017); *see also Banks*, 540 U.S. at 691 (holding that evidence which would be "advantageous" to the defendant constitutes *Brady* material). As the Maryland trial court found in its initial granting of habeas relief, the ECU report provides "fertile ground to impeach the State's case" by calling into question the "credibility of [the Verger Lab Analysis] on several bases, including the assertions that the substance was tested and that it tested positive for cocaine." *Moore*, No. 109320036, at *15–16 (Cir. Ct. Balt. City, July 31, 2018). The ECU report therefore would have been favorable to Moore's defense.

We turn now to the question of materiality. Suppressed evidence "is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 324 (2017) (internal citations omitted). Materiality is considered within the context of the evidentiary record as a whole. *Id.* at 325.

20

Moore was convicted of simple possession of cocaine and possession of cocaine with intent to distribute. The State bore the burden to prove, beyond a reasonable doubt, that the substance Moore had in his possession was, in fact, cocaine. To meet this burden, the State relied on a single piece of evidence: the Verger Lab Analysis. Verger himself did not testify. The ECU report claims to list "all transactions performed on [the plastic bag]." J.A. 334–35. Further, one of the State's witnesses testified that the ECU report "document[ed] *every time* somebody [took] custody of the narcotics." J.A. 887 (emphasis added). Although the ECU report lists the names of several individuals who accessed the plastic bag, it never mentions Verger, thereby calling the reliability of the Verger Lab Analysis into question.

Moore's trial counsel testified during a postconviction hearing that he may have changed his entire approach to the theory of the case if the State had not suppressed the ECU report. He could have argued, for example, that the plastic bag did not contain cocaine or that the evidence had been handled improperly. Given the centrality of this evidence to the State's case, there is a reasonable probability that the result of the proceeding would have been different had the report been timely disclosed. We agree with the Maryland trial court's conclusion in its initial ruling granting habeas relief that the ECU report would have

21

been material to Moore's defense. *Moore*, No. 109320036, at \*15–16 (Cir. Ct. Balt. City, July 31, 2018).[9]

Because the Maryland trial court's second ruling on Moore's state habeas petition unreasonably applied *Brady* and the State suppressed favorable, material evidence, we agree with the district court that federal habeas relief is warranted.

### D. The District Court's Order Appointing Counsel

In an effort to make an end run around the district court's well-reasoned opinion, the State argues on appeal that the district court exceeded its authority when it appointed federal habeas counsel "for the limited purpose of assisting Moore in further briefing [his surviving ineffective assistance of counsel claim] and perhaps, reframing that ground through appropriate processes." *Moore*, 2023 WL 2480545, at \*11 (phase 7). The State relies principally on two of this court's prior decisions, *Hyman v. Hoekstra*, 41 F.4th 272 (4th Cir. 2022), and *Folkes v. Nelsen*, 34 F.4th 258 (4th Cir. 2022), to support its argument that the district court acted improperly as an advocate.

---

[9] The dissent baselessly accuses the majority of intruding on the sovereignty of the Maryland state courts. It is the dissent, however, that urges us to ignore altogether and thus overrule the Maryland court's finding that the report would have been favorable and material. *See Moore*, No. 109320036, at \*15–16 (Cir. Ct. Balt. City, July 31, 2018) (ruling by the Maryland post-conviction court concluding that the ECU report would have been favorable and material to Moore's defense); *see also Moore*, 2019 WL 4017522, at \*12 (leaving intact prior findings of favorability and materiality and remanding on different grounds); *Moore*, No. 109320036, at \*7 (Cir. Ct. Balt. City, Feb. 5, 2020) (leaving intact prior findings of favorability and materiality).

*Hyman* is inapposite. In *Hyman*, an incarcerated individual filed a habeas petition arguing that his Sixth Amendment right to "effective assistance of conflict-free counsel" had been violated when his lawyer failed to withdraw and testify as an exculpatory witness where such testimony could have refuted the prosecution's key witness. 41 F.4th at 280. This court explained that a federal court of appeals is precluded from revising a habeas petitioners' claims *sua sponte* and from considering claims never presented for review in the habeas petition, briefing, or oral arguments. *Id.* at 290–91. Such revisions violate the party-presentation principle. *Clark v. Sweeney*, 607 U.S. --, 2025 WL 3260170 (2025). In contrast to the petitioners in *Hyman* and in *Sweeney*, however, Moore raised his *Brady* claim repeatedly and the claim was adjudicated on the merits in both the state and federal habeas proceedings.[10] This claim was not raised for the first time on appeal.

In *Folkes*, an individual incarcerated in state prison claimed that his trial counsel had been ineffective for failing to file a petition for rehearing. 34 F.4th at 270–71. The federal district court rejected this claim but nonetheless granted habeas relief based on different facts that were never raised in the state habeas proceedings—namely, trial counsel's failure to advise the petitioner of an adverse decision and of his right to appeal. *Id.* This court concluded that the district court acted improperly when it *sua sponte* granted

---

[10] The dissent's opening asseveration—"Here we go again"—and its closing plea to the Supreme Court to "set [it] right," attempts to liken our opinion to the appellate court decision in *Sweeney v. Graham*, 2025 WL 880452 (4th Cir. Mar. 13, 2025). There, habeas relief was granted "on a claim that Sweeney never asserted." *Sweeney*, 607 U.S. --, 2025 WL 3260170, at *1. Here, Moore raised his *Brady* claim before the state habeas courts, the federal district court, and on appeal to this court. Simply declaring that two cases are the same does not make it so.

habeas relief on factual grounds that were not raised in the state habeas proceedings. *Id.* at 268–69, 271.

We glean from *Folkes* that a federal district court may not *sua sponte* grant habeas relief on a claim that was never raised in state habeas proceedings, absent an exception to the deference AEDPA requires. In this case, the district court did not run afoul of this rule. Moore presented both his *Brady* claim and his ineffective assistance of counsel claim before the Maryland state courts and both claims were fully adjudicated on the merits during those proceedings.

This court in *Folkes* also stressed the petitioner's obligation to identify the "precise factual circumstances" and "the allegedly deficient performance that the federal court is to review." 34 F.4th at 268. In his *pro se* petition, Moore identified the factual circumstances that form the basis of his claims and the allegedly deficient performance of the state habeas court.

We soundly reject any implication that district courts are precluded from requesting clarification on an issue raised by a party in habeas proceedings. District courts have broad discretion to appoint counsel to represent indigent habeas petitioners when doing so is in the "interests of justice." 18 U.S.C. § 3006A(a)(2)(B); 28 U.S.C. § 2254(h). The district court acted properly when it appointed counsel for the purpose of clarifying an issue raised in Moore's *pro se* petition: the state court's incongruous factual findings. This appointment was in keeping with the district court's obligation to review *pro se* filings liberally. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

24

Appointed counsel appropriately sought leave to amend Moore's habeas petition, and the amended petition raised both the *Brady* claim and the ineffective assistance of counsel claim (phase 8). The district court acted within the scope of its considerable authority and in accordance with the requisite AEDPA deference in granting habeas relief on the basis of Moore's amended petition.

### E. The Bounds of Habeas Relief

Though we affirm the district court's grant of habeas relief, we find that the district court abused its discretion by ordering Moore's conviction conditionally vacated.[11] Lower federal courts are precluded from vacating state court convictions in federal habeas proceedings. *Rimmer v. Fayetteville Police Dep't*, 567 F.2d 273, 277 (4th Cir. 1977). Only the United States Supreme Court is permitted to do so. *See Smith v. Spina*, 477 F.2d 1140, 1147 (3d Cir. 1973). Rather than reversing or vacating a state court conviction, a federal district court sitting in habeas may only provide relief from the direct or collateral consequences of the conviction. *See Gentry v. Deuth*, 456 F.3d 687, 693 (6th Cir. 2006).

Lower federal courts do, however, have substantial discretion to fashion a remedy "as law and justice require." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting 28

---

[11] The State also contends that the district court abused its discretion when it ordered Moore's release unless he was retried within sixty days. The State argues that the district court was required to allow at minimum 120 days to decide whether to retry Moore. No such rule exists. To the contrary, federal courts have "broad discretion in conditioning a judgment granting habeas relief," *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987), and the State has not demonstrated why sixty days was an abuse of discretion, whereas 120 days would not have been.

U.S.C. § 2243). Thus, while a federal district court may not vacate a state court conviction—even one obtained unconstitutionally—a federal district court can "nullify" such a conviction. *Gentry*, 456 F.3d at 696; *see also Rimmer*, 567 F.2d at 277 ("[T]he state court judgment [is] authoritatively declared void. Thereafter, the state court judgment should have no preclusive effect."). Nullification is "akin to a non-prejudicial dismissal." *Gentry*, 456 F.3d at 696. In the case of a petitioner like Moore who seeks habeas relief from the collateral consequences of a completed sentence, nullification of the conviction would provide relief from those consequences.

On remand, the district court is directed to issue a new order that is consistent with the proper bounds of habeas corpus relief.

## IV. Conclusion

For the foregoing reasons, we vacate the order of the district court and remand with instructions.

*VACATED AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

Here we go again.  *See Clark v. Sweeney*, 607 U.S. ___, No. 25-52, 2025 WL 3260170 (2025) (per curiam) (summarily reversing a recent judgment of this court that expanded a § 2254 habeas petition and reiterating the deferential standard of review that we must apply in our review of state criminal proceedings).  Despite established jurisprudence and the Supreme Court's recent applicable instruction, the majority affirms the grant of a § 2254 habeas petition based on a *Brady* issue that Moore chose not to appeal in state court and chose not raise in his § 2254 petition.  In doing so, it overrules the state post-conviction court's extensive consideration of the issue, relying on its own assessment of the facts, which, when examined, provide no support for any *Brady* claim.  In short, the majority (1) violates the party presentation doctrine; (2) erroneously concludes that procedural default is not applicable; (3) runs over the required deference to state decision-making under § 2254; and (4) errs in its review of the evidence, not even mentioning critical and material record evidence showing a complete and consistent record of the State's chain of custody that conclusively defeats Moore's *Brady* claim.  For these reasons, as addressed more fully herein, I dissent.

I

In November 2011, a jury in Baltimore City, Maryland, convicted Moore of possession of cocaine and possession of cocaine with intent to distribute.  The State's evidence included testimony from two police detectives who stated that, as they approached Moore on a street in Baltimore on November 3, 2009, to investigate a report

27

of drug distribution and announced that they were police, Moore pulled a plastic bag containing several small items from his pocket and discarded it before fleeing on foot. One detective ran after Moore and arrested him, while the other picked up the discarded item, which was a clear, plastic shower cap containing "90 gel caps of a white rock substance."

At trial, one of the detectives explained that, after leaving the scene, he submitted the 90 gel caps of white rock substance to the police department's Evidence Control Unit, which thereafter tracked when someone took custody of the evidence from that unit on a chain of custody record. The State then offered the bag of 90 gel caps into evidence as Exhibit 2, which included the Evidence Control Unit's chain of custody record attached to the bag. After asking to see the exhibit, Moore's counsel said, "No objection," and the exhibit was admitted. The State also introduced as Exhibit 3 a drug analysis of the 90 gel caps showing that they contained approximately 10.28 grams of cocaine base. Although Moore had originally requested live testimony from the chemist who performed the analysis — identified on the drug analysis report as Barry Verger — Moore withdrew that request, and Exhibit 3 was admitted without the chemist's testimony.

A

After his conviction and sentencing, Moore filed a petition for post-conviction relief in the Circuit Court for Baltimore City, pursuant to Maryland's Uniform Postconviction Procedure Act. In support of his petition, he attached two chain of custody documents — the chain of custody document from the Evidence Control Unit and the "Laboratory Evidence Transfer Form," a chain of custody document from the police department's

28

Laboratory Section. In his petition, Moore represented that his attorney had previously given him the Laboratory Section chain of custody document, which reflected that chemist Barry Verger had taken custody of the evidence on the morning of December 9, 2009, before returning it to the "CDS Vault" less than an hour later after testing it. But Moore alleged that the State had failed to timely disclose the Evidence Control Unit's chain of custody record, which did not show Verger taking custody of the evidence for testing. Instead, the Evidence Control Unit's chain of custody record indicated that the detective had turned over 90 gel caps to the Evidence Control Unit on November 3, 2009, the day of Moore's arrest, and that the next day, a Laboratory Section employee had taken custody of the evidence for "Lab Work." The next entry on the Evidence Control Unit's chain of custody record reflects that the same Laboratory employee returned the evidence to the Evidence Control Unit on December 10, 2009, with the entry stating "Reason: Lab Work Complete."

Moore maintained that the two chain of custody records were inconsistent and that the absence of an entry showing Verger's testing on the Evidence Control Unit chain of custody record called into question whether Verger had in fact tested the 90 gel caps. Accordingly, he alleged that the State had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to timely disclose the Evidence Control Unit chain of custody record, which was provided to Moore only during trial and which, he alleged, would have been helpful for impeachment purposes. Moore also asserted an ineffective assistance of counsel claim alleging that his trial counsel was "ineffective for failing to object to the admission of the chain of custody, in particular as it related to the chemist," among other claims.

29

After two state post-conviction court hearings and two appeals to the Maryland Court of Special Appeals, the state courts rejected both of Moore's claims pertaining to the Evidence Control Unit chain of custody record. More particularly, following the second post-conviction hearing, the Circuit Court for Baltimore City issued a memorandum opinion and order fully addressing Moore's two claims and denying them. The court found that even though the Evidence Control Unit's chain of custody record, which was admitted at trial as part of Exhibit 2, was seen by Moore for the first time when it was admitted and therefore that its disclosure was late, the timing nonetheless "provided the defense . . . an opportunity to use the evidence to its advantage." (Citing *Williams v. State*, 416 Md. 670, 691 (2010)). As the court reasoned, Moore could have "require[d] the State to produce the chemist . . . to examine him as to the discrepancies between the ECU [Evidence Control Unit] Document and the [Laboratory Evidence Transfer Form]" and was also "free to cross-examine [the detective] on this same subject." The court thus concluded that "the State's disclosure of the ECU Document mid-trial [did] not amount to a *Brady* violation."

As to Moore's claim of ineffective assistance of counsel, the post-conviction court concluded that "trial counsel's failure to [object] [did] not amount to ineffective assistance of counsel." It noted that, "[i]n view of trial counsel's defense theory (challenging the control/custody element of the charge, not the illicit nature of the recovered substance)," it was giving "substantial deference to trial counsel's reasonable strategic choice not to draw (additional) attention to the quantity and illicit nature of what was recovered — 90 gel caps of cocaine."

30

The post-conviction court accordingly denied Moore's state petition for post-conviction relief.

Moore filed an application for leave to appeal the post-conviction court's ruling to the Maryland Court of Special Appeals, arguing that the post-conviction court had erred in rejecting his claim that his trial counsel had provided ineffective assistance of counsel in responding to the Evidence Control Unit chain of custody record. But he did not seek to appeal the post-conviction court's rejection of his *Brady* claim.

The Maryland Court of Special Appeals summarily denied the application for leave to appeal.

B

In February 2020, Moore filed a petition for habeas corpus in the district court under 28 U.S.C. § 2254, in which he challenged the state courts' denial of several ineffective assistance of counsel claims, including his claim that his trial counsel was ineffective for failing to inspect and object to the admission of the Evidence Control Unit chain of custody record at trial. He did not, however, challenge the state courts' denial of his *Brady* claim.

The district court rejected Moore's claims, stating that it could not "say that the circuit court unreasonably applied *Strickland* to the facts, considering the close examination required to appreciate the significance of the ECU [Evidence Control Unit] report." But rather than then denying Moore's petition, the court chose to resurrect Moore's *Brady* claim, even though the court acknowledged that "Moore chose not to assert [it] in his federal habeas petition" and, indeed, that Moore had been "clear and consistent in his

31

federal habeas corpus submissions about the claims he [was] asserting, none of which include a *Brady* claim." Nonetheless, the court determined, as a matter of justice, that the *Brady* "issue require[d] further review" and appointed counsel specifically to brief the *Brady* question. It further instructed that, "[t]o the extent a reframing of the Petition is necessary for the *Brady* issue to be properly before the Court, Petitioner's brief should be accompanied by an appropriate motion." Counsel accordingly argued the *Brady* claim identified by the court.[1]

The State opposed Moore's motion to add the *Brady* claim to his petition, relying on our decision in *Folkes v. Nelsen*, 34 F.4th 258 (4th Cir. 2022), and arguing that "because Moore declined to raise a *Brady* claim in his pro se petition," the district court "should not *sua sponte* enlarge the scope of the petition beyond what Moore himself had asked the Court to consider." The State also argued (1) that Moore's *Brady* claim was procedurally defaulted; (2) that the state post-conviction court's decision that "there was no *Brady* violation because the defense could have made effective use of the ECU [Evidence Control

---

[1] The majority misleadingly states that "Moore requested the federal district court to appoint counsel . . . [and] the federal district court granted Moore's request to appoint counsel to represent him in the ongoing federal habeas proceedings." *Ante* at 8. The record shows that Moore asserted five claims in his § 2254 petition, but not a *Brady* claim, and he requested the appointment of counsel. The district court denied all five claims without acting on Moore's request for counsel. It purported, however, to leave open his ineffective assistance of counsel claim relating to the chain of custody record, even though it had already explained why that claim failed on the merits. Then, because the district court thought it would be just to expand Moore's petition to assert a *Brady* claim, as it thought the state court's "conclusions on the *Brady* claim appear[ed] to be inconsistent" with its other rulings, the court itself noted that further "review and briefing" was required and determined it "[would] appoint counsel to assist Moore in that further briefing" to determine whether Moore was prejudiced by the "timing of the *Brady* disclosure," among other things.

Unit] chain of custody at trial was not objectively unreasonable"; and (3) that, in any event, "the ECU chain of custody was neither favorable to Moore nor material." With respect to the third issue, the State noted that "Moore's *Brady* claim [was] predicated on the premise that there was a supposed discrepancy between the ECU chain of custody and the laboratory chain of custody" — "namely, that chemist Verger's name appears on the laboratory chain of custody but not the ECU chain of custody." But, as the State argued, "*there was no discrepancy*" and the two documents were instead complementary, with the "ECU chain of custody document [serving as] a log of the movement of [the] drugs *in the Evidence Control Unit*," while the Laboratory Evidence Transfer Form recorded the movement of the evidence during the time the evidence was checked out from the Evidence Control Unit to the Laboratory Section (*i.e.*, from November 4, 2009, to December 10, 2009).

The district court rejected the government's defenses and granted Moore habeas relief based on a *Brady* claim that had neither been appealed to the Maryland Court of Special Appeals nor made an issue in his federal § 2254 petition. As to that claim, the district court held that the state post-conviction court's holding that the evidence had not been suppressed because "defense counsel could have effectively used the ECU report at trial" was "an unreasonable determination of the facts." The court concluded that the State's production of the Evidence Control Unit document at trial was late, noting that its own "independent review of the ECU report and the lab report confirm[ed]" that "[t]ime would be required to compare the two documents side-by-side to notice that the chemist who allegedly tested the evidence for illicit substances did not appear on the ECU report."

33

The court also concluded that the Evidence Control Unit chain of custody record was favorable to Moore, stating that the "discrepancy between the lab report and the ECU report gives the appearance that the evidence offered by the state on the testing of the drug evidence may not be an accurate representation of what occurred," such that "[t]he ECU report was impeachment evidence." Finally, the court concluded, in a single sentence, that "[b]ecause the state was required to prove that the substance Moore possessed was indeed illicit, the impeachment value of the ECU report render[ed] it material."

The district court thus granted Moore's habeas petition, ordering that the case be remanded to the Circuit Court for Baltimore City for a new trial within 60 days or be dismissed.

II

This case was fairly tried in a state court, and the state courts reasonably and completely disposed of Moore's *Brady* claim, which he did not pursue after the post-conviction court denied it. By nonetheless overturning the state proceedings, the majority opinion fails to heed the limitations imposed on it by 28 U.S.C. § 2254.

Section § 2254 authorizes a most narrow review by federal courts of state court criminal proceedings, well honoring the distinct sovereignty of the States by authorizing interference only when the state process *clearly* tramples well-established federal constitutional rights. It directs that a federal court "shall not" grant a writ of habeas corpus "unless" the earlier state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

34

United States" or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). And the Supreme Court has made emphatically clear that this standard is to be understood as "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). For our system of dual sovereignty to retain its vitality, state courts must remain "the principal forum" in which "constitutional challenges to state convictions" are asserted and adjudicated. *Id*. at 103. Consequently, as the *Harrington* Court recognized, federal habeas review of state criminal convictions comes at a cost, as it "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Id*. (quoting *Calderon v. Thompson*, 523 U.S. 538, 555–56 (1998)). Indeed, as the Court has characterized it, a federal court's grant of habeas relief to a person convicted in state court "intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id*. (cleaned up). Thus, the Court has gone to great lengths in defining the limited circumstances for granting habeas relief pursuant to § 2254. A federal court may grant habeas relief under § 2254 only in those extraordinary cases where there has been an "extreme malfunction in the state criminal justice system." *Id*. (cleaned up). To be sure, "§ 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings," but in lieu of a total ban, it limits federal courts' authority to issue the writ to cases where all "fairminded jurists" would agree "that the state court's decision conflicts with [the Supreme] Court's precedents." *Id*.

Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

35

comprehended in existing law *beyond any possibility* for fairminded disagreement." *Harrington*, 562 U.S. at 103 (emphasis added); *see also, e.g.*, *Mays v. Hines*, 592 U.S. 385, 391 (2021) (per curiam) ("The term 'unreasonable' [in § 2254(d)] refers not to 'ordinary error' or even to circumstances where the petitioner offers 'a strong case for relief,' but rather to 'extreme malfunctions in the state criminal justice system.' In other words, a federal court may intrude on a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification beyond any possibility for fairminded disagreement'" (cleaned up)).

The majority opinion fails to honor these restrictions in several respects, particularly because the affirming the district court's *sua sponte* addition of a *Brady* claim to Moore's § 2254 petition departs from the principle of party presentation. *See Clark*, 2025 WL 3260170, at *1; *Folkes v. Nelsen*, 34 F.4th 258 (4th Cir. 2022). Also, the majority altogether fails to explain away the fact that Moore's *Brady* claim was procedurally defaulted because he failed to exhaust available state remedies, as required by § 2254(b)(1). Moreover, the district court's factual findings, as well as those by the majority, disregard the limits imposed by § 2254 on a federal court's factfinding. Finally, the evidence in the record conclusively shows that the two chain of custody documents were consistent, complete, and not exculpatory, providing no support for a *Brady* violation. I will address these points in order.

A

The district court granted habeas relief based only on a *Brady* violation, concluding that the State's late production of the Evidence Control Unit's chain of custody document during trial was a "suppression" under *Brady* and that the document was both favorable to Moore and material. The *Brady* issue, however, was not presented to the district court in Moore's § 2254 petition. Moore asserted five grounds for federal habeas relief, and the district court denied all five. Nonetheless, the court concluded that there was a possible *Brady* violation, and in the interest of justice, it found that Moore's petition should be expanded to add the *Brady* claim. In doing so, it explicitly recognized that "Moore's federal habeas corpus petition [did] not include the *Brady* claim that was litigated during post-conviction proceedings." And it repeated this fact, stating more elaborately, "Moore chose not to assert a prosecutorial misconduct claim based on *Brady v. Maryland* in his federal habeas petition. Moore is clear and consistent in his federal habeas corpus submissions about the claims he is asserting, none of which include a *Brady* claim." Nonetheless, it appointed counsel to present that claim to the court. And after receiving argument from appointed counsel on the *Brady* issue, the district court granted federal habeas relief to Moore based on its conclusion that the State had violated *Brady*.[2]

---

[2] Despite the district court's repeated acknowledgement that Moore's § 2254 petition did "not include the *Brady* claim," the majority, without record support, announces its finding to the contrary, asserting that there is no party-presentation problem because Moore "raised his *Brady* claim repeatedly," including in "the federal district court." *Ante* at 23 & n.10. The record shows, however, that it was the district court that raised the *Brady* claim, *directing* appointed counsel to brief it *and*, "[t]o the extent a reframing of the Petition is necessary for the *Brady* issue to be properly before the Court," to accompany his brief with "an appropriate motion." The majority simply fails to acknowledge this record.

37

In expanding Moore's habeas petition in this manner, the district court clearly violated our precedent in *Folkes*. In *Folkes*, we reviewed the procedural requirements for habeas petitions under § 2254 and warned that the failure of a petitioner to plead all his grounds in his petition "may bar the petitioner from presenting additional grounds," 34 F.4th at 268 (cleaned up), adding that "a federal court reviews only the claims presented in the § 2254 petition," *id*. at 267. In the circumstances presented, which are uncannily similar to those before us, the district court authorized the expansion of the § 2254 habeas petition to include issues not raised in the petition and then appointed counsel to address the additional issues. We reversed, stating:

> Nothing authorizes a district court to expand or contract a petitioner's claim *sua sponte*. Instead, the court must consider claims as they are presented in the petition, reviewing them under the applicable standard. A court that alters the nature of a petitioner's claim, and grants habeas relief on that different ground, crosses the line between jurist and advocate. A court acting in this manner also bypasses AEDPA's framework, thus allowing a petitioner to do indirectly what the foregoing principles barred the petitioner from doing directly.

*Id*. at 269 (citation omitted).

The district court here did *precisely* what we prohibited in *Folkes*, and that alone should require us to reverse its judgment.

Moreover, were this not clear, the Supreme Court only recently summarily reversed one of our decisions from earlier this year that violated the party-presentation principle we applied in *Folkes*. In *Clark v. Sweeney*, the district court had denied a § 2254 habeas petition based on the ineffective assistance of counsel claim that the petitioner had raised in his petition. Yet, on appeal, we expanded the scope of the petition, declaring that "Sweeney's trial was marred by a 'combination of extraordinary failures from juror to

38

judge to attorney' that deprived Sweeney of his right to be confronted with the witnesses against him and his right to trial by an impartial jury," and then granted habeas relief. *Clark*, 2025 WL 3260170, at *1. The Supreme Court summarily reversed our decision, explaining:

> "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). The parties "'frame the issues for decision,'" while the court serves as "'neutral arbiter of matters the parties present.'" *Ibid.* (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). To put it plainly, courts "call balls and strikes"; they don't get a turn at bat. *Lomax v. Ortiz-Marquez*, 590 U.S. 595, 599 (2020).
>
> \*   \*   \*
>
> The Fourth Circuit's "radical transformation" of Sweeney's simple ineffective-assistance claim "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Sineneng-Smith*, 590 U.S., at 380, 375.

*Id.* at *1–2.

We would be wise to follow the Supreme Court's binding instruction and reverse, and I would do so.

## B

The district court also improperly rejected the State's argument that Moore had procedurally defaulted his *Brady* claim.

When applying for leave to appeal the denial of post-conviction relief by the Circuit Court of Baltimore City, Moore used a state provided application form. That form requested information about his post-conviction proceeding in the Circuit Court — specifically, paragraph 7 inquired of the date or dates of the post-conviction hearing; paragraph 8 inquired of the name of the post-conviction judge; and paragraph 9 inquired

39

of the issues "Raised on Post Conviction." These were all inquiries about the proceedings before the state post-conviction court, and in filling out paragraph 9 of the form, Moore listed all the issues that he presented to the Circuit Court, including claims for ineffective assistance of counsel and his claim alleging a *Brady* violation. Both of the claims relating to the Evidence Control Unit chain of custody record were denied by the post-conviction court, but while Moore could have appealed the denial of both claims, he chose only to challenge the ineffective assistance of counsel ruling, not the *Brady* decision. This is clearly stated in the next section of the application, which inquires of the "REASON(S) THAT THE CIRCUIT COURT ERRED IN DENYING APPLICANT'S PETITION FOR POST CONVICTION RELIEF." In response to the form's inquiry, Moore described four errors, none of which was a claim that the post-conviction judge had erred in denying his *Brady* claim. Three of the issues that he raised related to ineffective assistance of counsel, and the fourth, to the lower court's denial of his motion to compel the production of various documents. Clearly, Moore chose not to appeal the *Brady* ruling.

Moore's failure to appeal the state post-conviction court's ruling on his *Brady* claim to the Court of Special Appeals constitutes a procedural default. "An important corollary to the exhaustion requirement" in § 2254(b)(1), the doctrine of procedural default limits federal habeas courts from hearing a claim "that was not presented to the state courts consistent with the State's own procedural rules." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (cleaned up). And, as relevant here, Maryland's procedural rules require a defendant to include in his application for leave to appeal "a concise statement of the reasons why the judgment should be reversed or modified" that "specif[ies] the errors

40

allegedly committed by the lower court." Maryland Rule 8-204(b)(3). Moore prepared such a statement that identified several alleged errors, but he chose not to present his *Brady* claim to the Maryland Court of Special Appeals, even though that claim had been extensively litigated separate from his ineffective assistance of counsel claim. This omission clearly represents a procedural default. *See Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021) (explaining that "one example" of procedural default is "when a habeas petitioner fails to exhaust available state remedies and the court to which he would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred" (cleaned up)).

In its gloss of this issue, the majority opinion reports the record misleadingly. It states that "[i]n his [state] application for appellate review [of the post-conviction court], Moore asserted in the allegations-of-error section that the State had violated his rights under *Brady*." *Ante* at 11. The record shows, however, that Moore listed the *Brady* issue as one of the claims that he had made *to the post-conviction court*. But in the section for the issues he was presenting on appeal, Moore did not list or describe the *Brady* claim. Rather, he chose to focus his appeal on his ineffective assistance of counsel claims. The State's assertion of procedural default is thus clearly correct.

C

The district court also failed to defer to state court proceedings as required by § 2254. In particular, it failed to defer to the state court's finding of facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2).

41

The record shows that the chain of custody record for the Lab Section had been provided to Moore before trial and that the chain of custody document for the Evidence Control Unit was attached to the bag of 90 cocaine gel caps, which was introduced at trial as Exhibit 2. That document was not removed from the bag to create a separate document until it was removed during trial in front of the jury. And when the package of 90 gel caps, together with the chain of custody attached to it, was offered into evidence, Moore's counsel stated, "No objection."

Reviewing the record, the state post-conviction court found that had counsel wished to do so, he could have called the chemist, having "issued the requisite pre-trial notice to demand [his] presence . . . at trial." The post-conviction court further found that Moore's counsel could have cross-examined the detective through whom the exhibit was offered. Rather, as the state post-conviction court found, he decided, as a strategic matter, to do neither, concluding that it would not be in Moore's interest to focus on the cocaine. The court explained that it gave "substantial deference to trial counsel's reasonable strategic choice not to draw (additional) attention to the quantity and illicit nature of what was recovered — 90 gel caps of cocaine." At bottom, the court concluded:

> Though its untimeliness may violate discovery rules, evidence disclosed for the first time at trial does not constitute a *Brady* violation, provided the defense is given an opportunity to use the evidence to its advantage.

And it explained why defense counsel had the opportunity and chose not to take it.

The federal court below implicitly overruled these factual findings and elevated Moore's *Brady* claim to the basis for granting habeas relief *by supposing* a material inconsistency between the two chain of custody documents. In doing so, the district court

42

ignored the Supreme Court's instruction that, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility* for fairminded disagreement." *Harrington*, 562 U.S. at 103 (emphasis added). And more fundamentally, the district court failed to show "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## D

Finally, after knocking down all the guardrails designed to protect state sovereignty from unwarranted intrusion by federal habeas review, the district court found an *alleged* discrepancy between the Lab Section chain of custody document and the Evidence Control Unit chain of custody document. Amplifying that supposed discrepancy, the majority notes that the Lab Section chain of custody record shows that Barry Verger tested the 90 gel caps but that the Evidence Control Unit chain of custody record does not show his testing. Calling that a suspicious and material discrepancy, the majority says the omission of Verger's name on the Evidence Control Unit record perhaps would have allowed Moore's counsel to "raise a number of questions about the State's case: did Verger test the correct bag? Was his analysis valid? Was the Laboratory Section report doctored to add Verger's name?" *Ante* at 4. And based on this purported discrepancy, the majority rules that Moore's due process rights were violated by the State's suppression of favorable evidence that was material, in violation of *Brady*.

43

This is shocking to the core, as the record shows conclusively that both records were *entirely* consistent and that Verger's name *could have only appeared* on the record in the Lab Section, from where he took the 90 gel caps to test them.

It is worth describing the two chain of custody records in some detail, as this evidence lies at the heart of the majority's extraordinary grant of habeas relief. The first entry on the chain of custody record maintained by the Evidence Control Unit states that "CLEAR GEL CAPS CONTAINING WHITE ROCK SUBSTANCE (90 pieces) was turned over to" an officer in the Evidence Control Unit "on Tuesday November 3rd, 2009 by RONALD SURRATT" and "logged into evidence . . . at 10:58:56 PM." The second entry on that record shows that the next morning, "[o]n Wednesday November 4th, 2009, at 6:06:44 AM," Gloria Wilson, an employee with the Baltimore Police Department's Laboratory Section, took custody of the evidence from the Evidence Control Unit — "*Reason: Lab Work Out*." (Emphasis added).

The second chain of custody record, this one maintained by the Laboratory Section, then tracks the movement of the 90 gel caps while they were in the custody of the Lab Section. Specifically, using the same property number and criminal case number as used on the Evidence Control Unit's chain of custody record, the "Laboratory Evidence Transfer Form" shows that Gloria Wilson took custody of the gel caps at 6:18 a.m. on November 4, 2009, and that she deposited them into the Laboratory Section's "CDS Vault" later that same morning. The evidence remained there until the morning of December 9, 2009, when it was removed from the vault by chemist Barry Verger at 7:52 a.m. and returned to the Lab Section vault by him some 45 minutes later, at 8:36 a.m.

44

After the evidence had been tested by the chemist (and found to be 10.28 grams of cocaine base), the Laboratory Section returned the 90 gel caps to the Evidence Control Unit the next day, December 10, 2009. Specifically, the Laboratory Evidence Transfer Form shows that Gloria Wilson took the evidence out of the Laboratory Section's CDS Vault at 8:26 a.m. on December 10 and deposited it into an "ECU CDS Vault" at 8:58 a.m. Finally, the last entries on the Laboratory Evidence Transfer Form show that an employee named Lavern D. Hicks confirmed custody of the evidence a few hours later, leaving it in the "ECU CDS Vault."

After the evidence was returned to the Evidence Control Unit, it was again tracked on the Evidence Control Unit's Chain of Custody form. Specifically, the third entry on that form states, "On Thursday December 10th, 2009 at 12:51:54 PM, LAVERN HICKS (Badge: . . . ; Cmd: ECU) transferred item onto premises from GLORIA WILSON (Badge: . . . ; Cmd: LAB) *Reason: Lab Work Complete*." (Emphasis added). The Evidence Control Unit's Chain of Custody record thereafter lists all subsequent movement of the evidence, including when Detective Ronald Surratt took custody of the evidence on three occasions in November 2011 to bring it to court for Moore's trial on state drug charges.

It is the Evidence Control Unit's chain of custody record that is the basis for the majority's conclusion that the State violated Moore's constitutional right to due process by suppressing favorable evidence that would have been material to the jury's verdict in his case. *See Brady*, 373 U.S. at 87. Specifically, Moore and the majority maintain that although the State disclosed the Laboratory Evidence Transfer Form to him before trial, it did not similarly disclose the Evidence Control Unit's chain of custody record until it was

45

introduced into evidence at trial, and that denied him a fair trial because, unlike the Laboratory Evidence Transfer Form, the Evidence Control Unit's chain of custody record "has no entry reflecting that the chemist (Mr. Verger) ever retrieved the alleged drugs in the case for testing." "[T]herefore," Moore argues and the majority accepts, the Evidence Control Unit's chain of custody record "seriously calls in to question whether Mr. Verger actually tested the alleged drugs for cocaine," such that the State's late disclosure of that record prejudiced his defense by denying him that argument.

It is obvious that the Evidence Control Unit's chain of custody record, *when viewed in conjunction with* the complementary Laboratory Evidence Transfer Form, raises no such question or inference. The Evidence Control Unit record clearly shows the evidence being transferred to an employee of the Laboratory Section, "Reason: Lab Work Out." The Labs's chain of custody record then clearly details the movement of the evidence while it was in the custody of the Laboratory Section, including that chemist Barry Verger took possession of the evidence for about 45 minutes during the morning of December 9, 2009, to test the evidence. Both records then show the evidence being returned to the Evidence Control Unit on December 10, 2009, with the relevant entry on the Evidence Control Unit's chain of custody record stating, "Reason: Lab Work Complete." In these circumstances, the Evidence Control Unit record *would not and could not* specifically reflect Verger's testing, because he did not remove the 90 gel caps from the Evidence Control Unit; they were in the Lab Section.

Yet, the district court granted § 2254 habeas relief to Moore based on this *Brady* claim, concluding not only that the finding of the state post-conviction court that the State

46

had not suppressed the record in the circumstance was unreasonable but also that the other elements of a *Brady* claim were satisfied and that the Evidence Control Unit's chain of custody record was "favorable and material because it calls into question . . . whether Moore was in possession of an illicit substance." And even more remarkably, the majority now affirms that decision, suggesting even a doctoring of the record, for which there is absolutely no evidence or even ground for suspicion.

In doing so, the majority's opinion makes *zero* mention of the fact that the Evidence Control Unit's chain of custody record shows that from November 4, 2009, until December 10, 2009, the gel caps were with the Laboratory Section for "Lab Work." Instead, it notes that "Verger's name does not appear" on the Evidence Control Unit's chain of custody record and, on that basis, suggests that "the discrepancy . . . raise[s] . . . questions" as to whether "Verger test[ed] the correct bag," whether "his analysis [was] valid," and even whether "the Laboratory Section report [was] doctored to add Verger's name." *Ante* at 4. And based on this line of reasoning, the majority ultimately concludes that "there is a reasonable probability that" Moore would not have been convicted of the drug charges "had the [Evidence Control Unit's chain of custody] report been timely disclosed." *Ante* at 21.

This is all surmised without consideration of the material fact that Moore had possession before trial of the Lab Section's chain of custody document, which showed Verger's testing of the 90 gel caps. The majority's conclusion that the Evidence Control Unit's chain of custody record "would have been material to Moore's defense" by "calling . . . into question" Verger's report identifying the substance in the 90 gel caps as cocaine

47

base is farfetched, to say the least — indeed, logically impossible. *Ante* at 21–22. Instead, examining the Evidence Control Unit's chain of custody record side-by-side with the Laboratory Evidence Transfer Form shows that the two were entirely consistent, complementary, and unremarkable records — and that Verger took possession of the evidence for testing on December 9, 2009.

In short, there is no possibility, let alone a reasonable probability, that the result of Moore's trial would have been different had the State disclosed the Evidence Control Unit's chain of custody record before trial. It could have provided *no help* to Moore.

* * *

The majority's decision is, in my judgment, an extreme outlier, and I can only hope that the Supreme Court sets right our unfortunate intrusion into Maryland's sovereignty over its own criminal proceedings.

I would reverse.

48